## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JOHN DANIEL BLUE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION FILE NO.** |
| | * | |
| **MARIA DEGUADALUPE LOPEZ,** | * | |
| **a DFACS caseworker, in her individual** | * | |
| **capacity,** | * | |
| | * | |
| **Defendant.** | * | |

## COMPLAINT

COMES NOW Plaintiff and files this Complaint for damages against Defendant, showing the Court as follows:

## INTRODUCTION

### 1.

This is a 42 U.S.C. §1983 action against an employee of the Georgia Division of Family and Children's Services (DFACS) for causing Plaintiff to be arrested without probable cause and maliciously prosecuted in violation of the Fourth Amendment of the United States Constitution, as well as for depriving Plaintiff of his right to familial association in violation of the First and Fourteenth Amendments.

**JURISDICTION AND VENUE**

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343, as well as the aforementioned constitutional and statutory provisions.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose in Gwinnett County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia, and on the further grounds that Plaintiff and Defendant, upon information and belief, are domiciled within said District and Division.

4.

All of the parties herein are subject to the jurisdiction of this Court.

**PARTIES**

5.

Plaintiff John Daniel Blue is a citizen of the United States and the state of Georgia.

6.

Defendant   Maria   DeGuadalupe   Lopez   was,   at   all   times
relevant herein, a child protective services caseworker employed in the Gwinnett
County offices of the Georgia Department of Human Services, Division of Family
and Children's Services (DFACS) acting within the scope of said employment, who
is being sued in her individual capacity only.  She may be served pursuant to F.R.C.P.
4(d) by mailing a request for waiver of service to Maria Lopez, Gwinnett County
DFACS, 446 W. Crogan Street, Suite 400, Lawrenceville, Georgia 30046.

7.

At all times relevant herein, the above-named Defendant acted under color of
state law.

## FACTUAL ALLEGATIONS

8.

Plaintiff John Daniel Blue is the natural father of two minor children,
identified as "J. B." and "Z.B." to protect their privacy.  Zstanya Patrick is the mother
of both children, who were boys aged 11 and 14 at the time of the subject incident.

9.

On June 12, 2014, Mr. Blue and Ms. Patrick resided together with their
children at 618 Bedford Drive, Duluth, Georgia 30096.

10.

At approximately 10:00 a.m. on said date, Mr. Blue returned to the residence from work to take a shower and change his clothes.  When he arrived, Ms. Patrick and Defendant were talking with one another at the front door.

11.

Not realizing that Defendant was a DFACS worker and believing her to be a friend of Ms. Patrick's, he walked past her and into the residence.

12.

Neither Plaintiff nor Defendant spoke to one another, and Ms. Patrick did not introduce them.

13.

Ms. Patrick was a drug addict who had recently returned after a lengthy absence from the home, and Mr. Blue suspected that Defendant was a junkie because she was disheveled, appeared to be on drugs, and had a catheter coming out of her arm.

14.

Ironically, Mr. Blue had made several calls to the police complaining about Ms. Patrick's drug-induced behavior and violence toward him, but because of Defendant's appearance and the fact that she was talking to Ms. Patrick, it never

occurred to him that Defendant was a DFACS representative who was there in response to the complaints that he had made.

15.

After showering and changing, Mr. Blue left to go get food for the children, but a few minutes later he decided to come back and take them with him to Waffle House.

16.

Mr. Blue again went inside, dressed the boys, and then walked out with them to his van.

17.

As Mr. Blue and the boys were getting into the van, Defendant demanded to speak to them, but because of her appearance and her erratic behavior, Mr. Blue assumed she was on drugs and refused to stop.

18.

Then Defendant ran to her car, pulled up behind Mr. Blue's van, and deliberately drove her car into the back of the van while it was backing out.

19.

Defendant was not injured by the impact, nor did she have any fear or apprehension that impact between Mr. Blue's van and her car would cause her to be

injured because of the short distance and low speed involved.

20.

After the impact, Mr. Blue got out of his van and walked over to Defendant's car and asked what her problem was.  She still did not identify herself and there were no markings on her car indicating that it was an official vehicle, so Mr. Blue still had no idea who she was.

21.

Because Defendant appeared to be impaired and was behaving irrationally, Mr. Blue was determined to get his children away from her and to continue on his way.

22.

Since it was obvious that nobody was injured and there was no visible damage to the vehicles, Mr. Blue got back in the van and continued trying to back out, but he had to move forward and back several times to steer around Defendant's car, which was still stopped behind him and would not move out of the way.

23.

Once he managed to get around Defendant's car, Mr. Blue drove to a restaurant to feed the kids and then headed back to work, taking the boys with him.

24.

Mr. Blue took the boys to a sports bar in Norcross where he had a contract to

do renovations during non-business hours.  He turned on the big screen TVs so that the boys could watch TV and play, while he and his employee worked on reupholstering the booths.

25.

Later that afternoon, pictures of Mr. Blue and his sons suddenly appeared on every screen in the bar – as well as on millions of televisions, computer screens, and cell phones across the state of Georgia – as part of an Amber Alert bulletin announcing that he had abducted his children.

26.

After seeing the Amber Alert and learning that he was wanted by the police, Mr. Blue met his parents in a parking lot so that they could take the children, and he drove to the Norcross Police Department and turned himself in.

27.

The Norcross police contacted the Duluth Police Department, which had obtained arrest warrants for Mr. Blue at the behest of Defendant and – based upon Defendant's false statements to them – had gotten the GBI to issue the Amber Alert.

28.

Said warrants, which were based upon false information provided by Defendant to the Duluth police, charged Mr. Blue with interference with custody

under O.C.G.A. §16-5-45(b)(1), aggravated assault with a deadly weapon under O.C.G.A. §16-5-21(a)(2), and reckless conduct under O.C.G.A. §16-5-60(b).

29.

Defendant had no actual or arguable probable cause to accuse Mr. Blue of committing such crimes or to initiate any criminal charges against him.

30.

Said warrants resulted from the deliberate actions of Defendant to initiate criminal charges against Mr. Blue by communicating with the police and causing warrants and an Amber Alert to be issued based upon alleged facts and misinformation that did not constitute probable cause to charge Mr. Blue with any crime, and certainly not the crimes with which he was charged.

31.

There was no arguable probable cause to support the interference with custody charge because Mr. Blue, as the natural father of the children who was living with them and their mother, did not unlawfully interfere with anyone else's legal custody or otherwise engage in conduct that would constitute interference with custody or any other crime under Georgia law.

32.

There was no arguable probable cause to support the aggravated assault charge

because Mr. Blue did not use his vehicle offensively in a manner likely to cause serious bodily injury to Defendant, who in fact used her vehicle offensively against Mr. Blue and the children to keep them from leaving without any apparent legal authority to do so, and Defendant was fully aware of that fact when she falsely accused Mr. Blue of ramming her vehicle when in fact he was simply backing out to leave and she was the one driving offensively.

33.

There was no arguable probable cause to support the reckless conduct charge because Mr. Blue did not cause bodily harm or endanger the bodily safety of another person by consciously regarding a substantial and unjustifiable risk, nor did he otherwise engage in conduct that would constitute reckless conduct or any other crime under Georgia law.

34.

After Defendant learned that Mr. Blue had the right to take his children with him and had not unlawfully interfered with custody, she was determined to make sure that he was prosecuted for something.

35.

Because the District Attorney's office refused to prosecute the interference with custody and reckless conduct charges, Defendant continued to maintain that Mr.

Blue had assaulted her with his vehicle, even though she knew that was not true, and based upon that false assertion by Defendant, the District Attorney obtained an indictment against Mr. Blue for aggravated assault.

36.

As a result of Defendant's false statements leading to Mr. Blue's arrest and indictment, Mr. Blue remained in jail for seven months awaiting trial.

37.

Even though Mr. Blue was offered a plea bargain that would have resulted in his immediate release from jail and a sentence of time served, he refused to plead guilty because he had committed no crime.

38.

On January 14, 2015, Mr. Blue was tried in Gwinnett County Superior Court and the jury returned a verdict of not guilty, thereby securing his freedom and terminating the prosecution in his favor.

## THEORIES OF RECOVERY

### Count I
### Fourth Amendment Unreasonable Seizure of Person

39.

Paragraphs 1 through 38 are hereby re-alleged as if fully pled herein.

40.

The conduct of Defendant in causing and procuring the arrest and detention of Plaintiff without arguable probable cause constituted an unreasonable seizure of his person in violation of the Fourth Amendment.

41.

The law being clearly established in 2014 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendant is not entitled to qualified immunity.

## Count II
## Fourth Amendment Malicious Prosecution

42.

Paragraphs 1 through 41 are hereby re-alleged as if fully pled herein.

43.

Defendant caused a felony criminal prosecution to be initiated against Plaintiff for aggravated assault.

44.

Defendant not only caused the prosecution to be initiated, but she participated in and assisted with that prosecution from beginning to end.

45.

Defendant knew that there was no probable cause to support the charge of aggravated assault against Plaintiff, but she persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

46.

Said prosecution was based upon statements by Defendant that were either knowingly false or made with reckless disregard for the truth, and which rose to the level of malice.

47.

Accordingly, said prosecution was carried on maliciously and without probable cause, and it was ultimately terminated in Plaintiff's favor.

48.

The law being clearly established in 2014 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendant is not entitled to qualified immunity.

## Count III
## Interference With Right of Familial Association
## Under First and Fourteenth Amendments

49.

Paragraphs 1 through 48 are hereby re-alleged as if fully pled herein.

50.

Defendant made false statements about Plaintiff so that an Amber Alert and arrest warrants would be issued against him.

51.

Such false statements were directed toward Plaintiff's relationship with his children and had the effect of interfering with that relationship.

52.

The intentional actions of Defendant in falsely accusing Plaintiff of abducting his children and assaulting her with his vehicle interfered with Plaintiff's familial relationship with his children in violation of the First and Fourteenth Amendments, which guarantee a parent's right to care, custody, and control of minor children.

53.

The law being clearly established in 2014 that an officer of the state cannot make false statements to interfere with a father's right of association with his minor children, Defendant is not entitled to qualified immunity.

## **DAMAGES**

54.

Paragraphs 1 through 53 are hereby re-alleged as if fully pled herein.

55.

As a direct and proximate result of the above described conduct of Defendant, Plaintiff John Daniel Blue was unreasonably and unlawfully arrested and prosecuted without probable cause, was imprisoned and deprived of his liberty and the companionship of his children, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, was forced to miss work and lose earnings from his business, and was forced to incur legal expenses and other economic and non-economic losses for which Defendant is liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

56.

The aforementioned misconduct of Defendant rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against her.

57.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of

litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a)      That this action be tried by a jury;

b)      That judgment be entered in favor of Plaintiff and against Defendant

in an amount to be determined by the enlightened conscience of fair

and impartial jurors;

c)      That Plaintiff be awarded attorney's fees and reasonable expenses of

litigation;

e)      That all costs of this action be taxed against Defendant; and

f)      That the Court award any additional or alternative relief as may be

deemed appropriate under the circumstances.

This 21st day of May, 2015.

Respectfully submitted,

*/s/ Craig T. Jones*
CRAIG T. JONES
GA Bar No. 399476
*Lead counsel for Plaintiff*

THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 W. Ponce de Leon Avenue
Decatur, GA  30030
(404) 373-1800
craig@orlandofirm.com