## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JOHN DANIEL BLUE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION FILE NO.** |
| | * | **1:15-CV-01834-RWS** |
| **MARIA DEGUADALUPE LOPEZ,** | * | |
| **a DFACS caseworker, in her individual** | * | |
| **capacity,** | * | |
| | * | |
| **Defendant.** | * | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

COMES NOW Plaintiff John Daniel Blue (hereafter "Plaintiff" or "Blue") and hereby responds to the motion to dismiss (Doc. 7) filed by Defendant Maria DeGuadaupe Lopez ("Defendant" or Lopez") as follows:

## SUMMARY OF ARGUMENT

Defendant's motion purports to expand this case into something much broader than the simple constitutional tort claims alleged by Plaintiff.  Plaintiff has only brought three claims, all of which arise from his arrest and prosecution without arguable probable cause:

1)  A Fourth Amendment claim for unlawful arrest based upon the fact that

Defendant caused him to be arrested under false pretenses;

2)      A Fourth Amendment claim for malicious prosecution based upon the fact that Defendant continued to pursue a criminal prosecution against Plaintiff even though she knew that he had committed no crime; and

3)      A claim under the Fourteenth (and/or First) Amendment for depriving Plaintiff of his right of association with his children by virtue of having him arrested and jailed for seven months while the malicious prosecution against him was ongoing.

Plaintiff is not challenging the state court order giving custody of the children to their mother, and therefore the *Rooker-Feldman* doctrine does not apply.  The damages sought in this case have nothing to do with the custody order, because they were caused by conduct that occurred before the order was entered.  Specifically, Defendant came to Mr. Blue's home and observed him leaving with his children, and when she rammed her car into his to stop him from leaving, she falsely accused him of assaulting her and interfering with custody – all of which took place before any custody order was issued.  Plaintiff is seeking compensation for the violation of his rights independently of the custody order, and he seeks no damages resulting from the custody order itself.

Mr. Blue's Complaint states plausible claims under the Fourth and Fourteenth

Amendments.  To the extent that there is any confusion about what is being claimed and what is not, the remedy is amendment rather than dismissal.  Accordingly, Plaintiff has filed an amended complaint within the time allowed by Rule 15 for amendments as a matter of right.  (Doc. 11).

## FACTS

For purposes of a Rule 12(b) motion to dismiss, the only relevant facts are the allegations of Plaintiff's Complaint, as amended.  (Doc. 1, 11).  Plaintiff has made the following allegations in support of his claim against Defendant:

1.

This is a 42 U.S.C. §1983 action against an employee of the Georgia Division of Family and Children's Services (DFACS) for causing Plaintiff to be arrested without probable cause and maliciously prosecuted in violation of the Fourth Amendment of the United States Constitution, as well as for depriving Plaintiff of his right to familial association in violation of the First and Fourteenth Amendments.

6.

Defendant Maria DeGuadalupe Lopez was, at all times relevant herein, a child protective services caseworker employed in the Gwinnett County offices of the Georgia Department of Human Services, Division of Family and Children's Services (DFACS) acting within the scope of said employment, who is being sued in her individual capacity only.  She may be served pursuant to F.R.C.P. 4(d) by mailing a request for waiver of service to Maria Lopez, Gwinnett County DFACS, 446 W. Crogan Street, Suite 400, Lawrenceville, Georgia 30046.

7.

At all times relevant herein, the above-named Defendant acted under color of state law.

8.

Plaintiff John Daniel Blue is the natural father of two minor

3

children, identified as "J. B." and "Z.B." to protect their privacy. Zstanya Patrick is the mother of both children, who were boys aged 11 and 14 at the time of the subject incident.

9.

On June 12, 2014, Mr. Blue and Ms. Patrick resided together with their children at 618 Bedford Drive, Duluth, Georgia 30096.

10.

At approximately 10:00 a.m. on said date, Mr. Blue returned to the residence from work to take a shower and change his clothes. When he arrived, Ms. Patrick and Defendant were talking with one another at the front door.

11.

Not realizing that Defendant was a DFACS worker and believing her to be a friend of Ms. Patrick's, he walked past her and into the residence.

12.

Neither Plaintiff nor Defendant spoke to one another, and Ms. Patrick did not introduce them.

13.

Ms. Patrick was a drug addict who had recently returned after a lengthy absence from the home, and Mr. Blue suspected that Defendant was a junkie because she was disheveled, appeared to be on drugs, and had a catheter coming out of her arm.

14.

Ironically, Mr. Blue had made several calls to the police complaining about Ms. Patrick's drug-induced behavior and violence toward him, but because of Defendant's appearance and the fact that she was talking to Ms. Patrick, it never occurred to him that Defendant was a DFACS representative who was there in response to the complaints that he had made.

14A.

Defendant subsequently contacted the Juvenile Court and requested an emergency custody order, but she did not tell Mr. Blue of her intention to do so or otherwise communicate in any way that she had any official authority to either take custody of his children or prevent

him from doing so.

15.

After showering and changing, Mr. Blue left to go get food for the children, but a few minutes later he decided to come back and take them with him to Waffle House.

16.

Mr. Blue again went inside, dressed the boys, and then walked out with them to his van.

17.

As Mr. Blue and the boys were getting into the van, Defendant demanded to speak to them, but because of her appearance and her erratic behavior, Mr. Blue assumed she was on drugs and refused to stop.

18.

Then Defendant ran to her car, pulled up behind Mr. Blue's van, and deliberately drove her car into the back of the van while it was backing out.

19.

Defendant was not injured by the impact, nor did she have any fear or apprehension that impact between Mr. Blue's van and her car would cause her to be injured because of the short distance and low speed involved.

20.

After the impact, Mr. Blue got out of his van and walked over to Defendant's car and asked what her problem was.  She still did not identify herself and there were no markings on her car indicating that it was an official vehicle, so Mr. Blue still had no idea who she was.

21.

Because Defendant appeared to be impaired and was behaving irrationally, Mr. Blue was determined to get his children away from her and to continue on his way.

22.

Since it was obvious that nobody was injured and there was no visible damage to the vehicles, Mr. Blue got back in the van and continued trying to back out, but he had to move forward and back several times to steer around Defendant's car, which was still stopped behind him and would not move out of the way.

23.

Once he managed to get around Defendant's car, Mr. Blue drove to a restaurant to feed the kids and then headed back to work, taking the boys with him.

24.

Mr. Blue took the boys to a sports bar in Norcross where he had a contract to do renovations during non-business hours.  He turned on the big screen TVs so that the boys could watch TV and play, while he and his employee worked on reupholstering the booths.

25.

Later that afternoon, pictures of Mr. Blue and his sons suddenly appeared on every screen in the bar – as well as on millions of televisions, computer screens, and cell phones across the state of Georgia – as part of an Amber Alert bulletin announcing that he had abducted his children.

26.

After seeing the Amber Alert and learning that he was wanted by the police, Mr. Blue met his parents in a parking lot so that they could take the children, and he drove to the Norcross Police Department and turned himself in.

27.

The Norcross police contacted the Duluth Police Department, which had obtained arrest warrants for Mr. Blue at the behest of Defendant and – based upon Defendant's false statements to them – had gotten the GBI to issue the Amber Alert.

28.

Said warrants, which were based upon false information provided by Defendant to the Duluth police, charged Mr. Blue with interference with custody under O.C.G.A. §16-5-45(b)(1), aggravated assault with a deadly weapon under O.C.G.A. §16-5-21(a)(2), and reckless conduct under O.C.G.A. §16-5-60(b).

29.

Defendant had no actual or arguable probable cause to accuse Mr. Blue of committing such crimes or to initiate any criminal charges against him.

30.

Said warrants resulted from the deliberate actions of Defendant to

initiate criminal charges against Mr. Blue by communicating with the police and causing warrants and an Amber Alert to be issued based upon alleged facts and misinformation that did not constitute probable cause to charge Mr. Blue with any crime, and certainly not the crimes with which he was charged.

31.

There was no arguable probable cause to support the interference with custody charge because Mr. Blue, as the natural father of the children who was living with them and their mother, did not unlawfully interfere with anyone else's legal custody or otherwise engage in conduct that would constitute interference with custody or any other crime under Georgia law.

31A.

There was no custody order in effect at the time of the incident for which Mr. Blue was criminally charged, and while Defendant did obtain such an order after the fact, Mr. Blue was never put on notice of that order until after he was arrested.

32.

There was no arguable probable cause to support the aggravated assault charge because Mr. Blue did not use his vehicle offensively in a manner likely to cause serious bodily injury to Defendant, who in fact used her vehicle offensively against Mr. Blue and the children to keep them from leaving without any apparent legal authority to do so, and Defendant was fully aware of that fact when she falsely accused Mr. Blue of ramming her vehicle when in fact he was simply backing out to leave and she was the one driving offensively.

33.

There was no arguable probable cause to support the reckless conduct charge because Mr. Blue did not cause bodily harm or endanger the bodily safety of another person by consciously regarding a substantial and unjustifiable risk, nor did he otherwise engage in conduct that would constitute reckless conduct or any other crime under Georgia law.

34.

After Defendant learned that Mr. Blue had the right to take his children with him and had not unlawfully interfered with custody, she was determined to make sure that he was prosecuted for something.

35.

Because the District Attorney's office refused to prosecute the interference with custody and reckless conduct charges, Defendant continued to maintain that Mr. Blue had assaulted her with his vehicle, even though she knew that was not true, and based upon that false assertion by Defendant, the District Attorney obtained an indictment against Mr. Blue for aggravated assault.

36.

As a result of Defendant's false statements leading to Mr. Blue's arrest and indictment, Mr. Blue remained in jail for seven months awaiting trial.

37.

Even though Mr. Blue was offered a plea bargain that would have resulted in his immediate release from jail and a sentence of time served, he refused to plead guilty because he had committed no crime.

38.

On January 14, 2015, Mr. Blue was tried in Gwinnett County Superior Court and the jury returned a verdict of not guilty, thereby securing his freedom and terminating the prosecution in his favor.

40.

The conduct of Defendant in causing and procuring the arrest and detention of Plaintiff without arguable probable cause constituted an unreasonable seizure of his person in violation of the Fourth Amendment.

41.

The law being clearly established in 2014 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendant is not entitled to qualified immunity.

43.

Defendant caused a felony criminal prosecution to be initiated against Plaintiff for aggravated assault.

44.

Defendant not only caused the prosecution to be initiated, but she participated in and assisted with that prosecution from beginning to end.

45.

Defendant knew that there was no probable cause to support the charge of aggravated assault against Plaintiff, but she persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

46.

Said prosecution was based upon statements by Defendant that were either knowingly false or made with reckless disregard for the truth, and which rose to the level of malice.

47.

Accordingly, said prosecution was carried on maliciously and without probable cause, and it was ultimately terminated in Plaintiff's favor.

48.

The law being clearly established in 2014 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendant is not entitled to qualified immunity.

50.

Defendant made false statements about Plaintiff so that an Amber Alert and arrest warrants would be issued against him.

51.

Such false statements were directed toward Plaintiff's relationship with his children and had the effect of interfering with that relationship.

52.

The intentional actions of Defendant in falsely accusing Plaintiff of abducting his children and assaulting her with his vehicle interfered with Plaintiff's familial relationship with his children in violation of the First and Fourteenth Amendments, which guarantee a parent's right to care, custody, and control of minor children.

52A.

While the fundamental right of a parent to the care, custody, and control of his minor children is rooted in both the First and Fourteenth Amendments under precedents of the United States Supreme Court, the particular violation of that right which is implicated in this case is the Defendant's interference with Mr. Blue's Fourteenth Amendment right

of association and companionship.

52B.

Said claim for interference with familial rights is based upon the same conduct that is the basis for Plaintiff's Fourth Amendment claims for unlawful arrest and malicious prosecution: namely, Defendant's false statements to the police and prosecutors that Mr. Blue had committed the crimes of interference with custody, aggravated assault, and reckless conduct when Defendant either knew that he had committed no such crime or had no reasonable belief that he had that he had done so.

53.

The law being clearly established in 2014 that an officer of the state cannot make false statements to interfere with a father's right of association with his minor children, Defendant is not entitled to qualified immunity.

53A.

Plaintiff's claim for damages for interference with his right of association with his children is based upon the conduct of Defendant in causing him to be falsely arrested and maliciously prosecuted – and thus deprived of their companionship during the seven months that he was incarcerated – as a result of Defendant's false statements that he had interfered with custody, committed aggravated assault, and engaged in reckless conduct when he actually committed no crime and it was, in fact, Defendant Lopez who had acted recklessly and unlawfully.

55.

As a direct and proximate result of the above described conduct of Defendant, Plaintiff John Daniel Blue was unreasonably and unlawfully arrested and prosecuted without probable cause, was imprisoned and deprived of his liberty and the companionship of his children, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, was forced to miss work and lose earnings from his business, and was forced to incur legal expenses and other economic and non-economic losses for which Defendant is liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

(Complaint, Doc. 1 at ¶¶1, 6-38, 40-48, 50-53, 55; Amended Complaint, Doc. 11, ¶¶14A, 31A, 52A, 52B, 53A).

## LAW

### A.   Plaintiff must only plead sufficient facts to allege a plausible claim

As the Supreme Court has noted, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that

actual proof of those facts is improbable, and that a recovery is very remote and

unlikely." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

> To state a claim with sufficient specificity " 'requires a complaint with enough factual matter (taken as true) to suggest' the required element." The rule " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for **enough fact to raise a reasonable expectation that discovery will reveal evidence of'** the necessary element.'"

*Secretary of Labor v. Labbe,* 319 Fed. Appx. 761, 763 (11th Cir. 2008) (quoting

*Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) and *Twombly,*

550 U.S. at 556)) (emphasis added).

Plaintiff is only required to plead "enough factual content to nudge his claims

across the line from conceivable to plausible." *Speaker v. U.S. Dept. of Health &*

*Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1384-86

(11th Cir. 2010) (citing *Twombly,* 550 U.S. at 570) (reversing dismissal because

plaintiff's "allegations are not barren recitals of the statutory elements, shorn of

factual specificity").  In evaluating the sufficiency of the pleadings post-*Iqbal*, courts

are required to construe the complaint in the light most favorable to Plaintiffs.  *Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  The "complaint

should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).   The allegations need not "compel" an inference of liability, but need only "allow a reasonable factfinder to draw [that] inference." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009).

 *Iqbal* and *Twombly* are being overused by defendants.  One District Court judge has eloquently offered the following critique:

> From this Court's perspective and experience, *Twombly* has become the most over used tool in the litigator's toolbox.  Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations. These motions, which bear a close resemblance to summary judgment motions, view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as "bare recitals." They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the "plausibly stating a claim" requirement.  While these cautious lawyers, who have been encouraged by *Twombly* and *Iqbal,* have parsed the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly:* "Rule 12 {b} {6} does not permit dismissal of   a well-pleaded complaint simply because  'it strikes a  savvy judge that  actual proof  of those facts is improbable.'" *Watts v.  Fla. Int'l Univ.,* 495 F.3d 1289, 1295 {11th Cir. 2007) (quoting *Twombly, 550* U.S.  at 556). Blinded  by  the *Twombly/ Iqbal* compulsion,  many lawyers fail  to appreciate  the  distinction   between determining  whether  a claim

> for relief is "plausibly stated," the inquiry required by *Twombly/*
> *Iqbal,* and divining whether actual proof of that claim is
> "improbable," a feat impossible for a mere mortal, even a federal
> judge.

*Meyer v. Snyders Lance, Inc.,* No. 4:12-cv-00215-CDL, 2012 WL 6913724 (M.D.

Ga. 12/12/12), pp. 2-3.

For purposes of a motion to dismiss, the "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Viewing Plaintiff's allegations as a whole and taking them as true, the sum total of Defendant's alleged conduct clearly amounted to a deprivation of Plaintiff's right to be free from unreasonable seizures under the Fourth Amendment – as well as the right to be free from unwarranted interference with family relationships – and there is a reasonable expectation that discovery will flesh out the facts necessary to support or refute each claim. *See Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009) (the allegations need not "compel" an inference of liability, but need only "allow a reasonable factfinder to draw [that] inference"); *Secretary of Labor v. Labbe,* 319 Fed. Appx. 761, 763 (11th Cir. 2008) (the complaint need only "raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

The plausibility requirement of *Iqbal* does not mean that the Court crawls into the jury box and evaluates the credibility of the Plaintiff's factual allegations.  It simply means that the facts as alleged, if taken as true, must state a plausible claim.  Clearly if the facts alleged by Plaintiff are true, then jurors could find that Defendants caused Plaintiff to be arrested and maliciously prosecuted without arguable probable, thereby depriving him of his liberty and the companionship of his children for a period of seven months.

**B.     Plaintiff has pled a plausible Fourth Amendment claim for unlawful arrest**

"In Fourth Amendment terminology, an arrest is a seizure of the person, and the reasonableness of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest."  *Skop v. City of Atlanta*, 485 F. 3d 1130, 1137 (11th Cir. 2007).  A Fourth Amendment false arrest claim is cognizable under 42 U.S.C. §1983.  At the summary judgment phase, the salient question is whether, construing the facts in the light most favorable to plaintiff, a reasonable officer would know there was no probable cause to arrest the plaintiff.  *Id.*

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime, *Crosby v. Monroe County,* 394 F.3d 1328, 1333 (11th Cir. 2004), and the operative fact pattern." 485

F. 3d at 1137-38.   Mr. Blue was charged with interference with custody, which occurs when a person, without lawful authority, "knowingly or recklessly takes or entices a child … away from the individual who has lawful custody of such child." O.C.G.A. §16-5-45(b)(1).  "Lawful custody" under that code section is defined as "that custody inherent in the natural parents, that custody awarded by proper authority as provided in Code Section 15-11-45, **or** that custody awarded to a parent, guardian, or other person by a court of competent jurisdiction."  §16-5-45(a)(3) (emphasis added to stress the disjunctive).  Because the children lived with both of their natural parents and there was no custody order providing otherwise at the time of the alleged offense, Mr. Blue was not knowingly or recklessly depriving anyone from lawful custody when he took his own children, from his own home, to get something to eat in the presence of someone he did not know to be a DFACS worker. The fact that the Defendant DFACS worker called in a request for an emergency custody order after she arrived at the home, which was not entered until later that day, does not equate to probable cause if Mr. Blue had no way of knowing that any such order was about to be issued.[1]

---

[1] The original Complaint was completely silent as to the existence or non-existence of a custody order.  Relying, as the Court must, upon the allegations as pled, Plaintiff alleged that he was falsely accused without arguable probable cause. (Doc. 1, ¶31, That alone was sufficient to allege a plausible Fourth Amendment claim, and

Plaintiff has alleged enough facts to support a plausible claim that he was arrested without arguable probable cause..  Accordingly, the case should proceed to discovery.

**B.**      **Plaintiff has pled a plausible Fourth Amendment claim for malicious prosecution**

The Eleventh Circuit "has identified malicious prosecution as a violation of the *Fourth Amendment* and a viable constitutional tort cognizable under *§ 1983*." *Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)*; *also Skop*, 485 F. 3d at 1144.  The elements of a Fourth Amendment malicious prosecution claim are determined by the elements of the state law tort.  *Id.*

Under Georgia law, malicious prosecution is a "criminal prosecution which is carried on maliciously and without probable cause and which causes damage to the person prosecuted shall give him a cause of action." O.C.G.A. 51-7-40. *Atlantic Zayre, Inc. v. Meeks*, 194 Ga. App. 267 (1990).  Additionally, the "prosecution, whatever its extent," must be "terminated in favor of the plaintiff." *Barber v. H & H*

---

discovery would have fleshed out the facts necessary to determine the evidentiary sufficiency of that claim.  Nonetheless, because Defendant has introduced material outside the pleadings to argue that Plaintiff violated a custody order, Plaintiff has filed an Amended Complaint which clarifies the allegations to make clear that there was no custody order in effect at the time of Plaintiff's alleged offense, and in any event, Plaintiff was not on notice of any such order or of Defendant's intention to seek one.  (Amended Complaint, Doc. 11, ¶¶14A, 31A, 52A, 52B, 53A).

*Muller Enterprises, Inc.*, 197 Ga. App. 126, 128, 397 S.E. 2d 563, 564 (1990).  In ascertaining whether there is a cause of action for malicious prosecution, the emphasis is upon the particular offense that was prosecuted and not upon whether there was probable cause to charge the plaintiff with any offense at all.   *Booker v. Eddins*, 183 Ga. App. 449, 451 (1987).  Accordingly, Plaintiff could have a malicious prosecution claim for being prosecuted and tried for aggravated assault – even assuming for the sake of argument that there was probable cause to charge him with interference with custody at the time of his arrest.  Indeed, it can be inferred that the aggravated assault prosecution was motivated by Defendant's embarrassment that the District Attorney had refused to prosecute the interference with custody charge, and to retaliate against Plaintiff for challenging her authority – which could satisfy the element of malice.

Once again, Plaintiff has stated a plausible claim.  The malicious prosecution count cannot be dismissed at the pleadings stage.

**C.    Plaintiff has pled a plausible claim for interference with right of association**

The same conduct that gives rise to the Fourth Amendment claims is also asserted as the basis for an interference with family relations claim.  It is important to note – although it may not have been clear to Defendant until the Complaint was

amended – that claim is not a challenge to any state court custody order, but it is merely an alternate theory of recovery for being unlawfully arrested, incarcerated, and consequently isolated from his children.  Simply put, an argument that Mr. Blue was deprived of his rights as a parent has more jury appeal than an argument that he was deprived of his rights as a suspected criminal, although both claims are based on exactly the same conduct.  Plaintiff understands that his claim for damages arising from his arrest and prosecution does nothing to negate the state court ruling; accordingly, the *Rooker-Feldman* doctrine is not implicated.

The damages sought in this case have nothing to do with the custody order, because they were caused by conduct that occurred before the order was entered. Specifically, Defendant came to Mr. Blue's home and observed him leaving with his children, and when she rammed her car into his to stop him from leaving, she falsely accused him of assaulting her and interfering with custody – all of which took place before any custody order was issued.  Plaintiff is seeking compensation for the violation of his rights independently of the custody order, and he seeks no damages resulting from the custody order itself.

While Defendant's point is well taken that the Eleventh Circuit recognizes interference with family relations to be a Fourteenth rather than First Amendment violation, Plaintiff has alleged that the right of familial association arises under both

Amendments. *See, generally, Robertson v. Hecksel*, 430 F. 3d 1254 (11th Cir. 2005) (collecting cases from other circuits).  Defendant wrongfully asserts, however, that Plaintiff has not pled a Fourteenth Amendment claim – even though that is the essence of his third count, which is captioned "Interference With Right of Familial Association Under First *and Fourteenth Amendment*s" and clearly states a plausible claim that Mr. Blue was deprived of the companionship of his children while he was incarcerated for seven months.  (Doc. 1, 11 – Count III, ¶¶50-53A).

Because Plaintiff has alleged a plausible Fourteenth Amendment claim for interference with familial rights, and because the Court's jurisdiction over that claim as asserted is not barred by the *Rooker-Feldman* doctrine, dismissal of that claim is likewise inappropriate.  Nevertheless, Plaintiff would still be able to claim damages for the mental anguish of being separated from his children as an element of his damages under the Fourth Amendment even if the familial association claim were dismissed, so any dismissal of that claim – while unwarranted – would not be fatal to the case as a whole.

## CONCLUSION

For the reasons set forth in the foregoing argument of law and citation of authority, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

This 2nd day of September, 2015.

Respectfully submitted,

*/s/ Craig T. Jones*
CRAIG T. JONES
GA Bar No. 399476
Counsel for Plaintiff

THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 W. Ponce de Leon Avenue
Decatur, GA  30030
(404) 373-1800
craig@orlandofirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of September, 2015, I electronically filed the foregoing **Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michelle Hirsch, Esq.
GEORGIA DEPARTMENT OF LAW
40 Capitol Sq. SW
Atlanta, GA 30334

                                        */s/ Craig T. Jones*
                                        _____
                                        Craig T. Jones
                                        Georgia Bar No. 399476
                                        Counsel for Plaintiff

THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, GA  30030
(404) 373-1800