# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JOHN DANIEL BLUE,      :
                   :
    Plaintiff,        :
                   :
    v.              :     CIVIL ACTION NO.
                   :     1:15-CV-01834-RWS
MARIA DEGUADALUPE  :
LOPEZ,             :
                   :
    Defendant.     :

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [32]. After a review of the briefs and the record, the Court enters the following Order.

## Background

This dispute arises out of an altercation between Plaintiff John Daniel Blue ("Plaintiff") and Defendant Maria Deguadalupe Lopez ("Defendant"). Plaintiff is a citizen of Georgia and Defendant is a child protective services caseworker employed by the Gwinnett County offices of the Georgia Department of Human Services, Division of Family and Children's Services ("DFCS"). (Compl., Dkt. [1] ¶¶ 5-6.) On June 12, 2014, Defendant visited

Plaintiff's home to meet with Plaintiff's girlfriend, Zstanya Patrick ("Patrick"), about a complaint from the police department regarding domestic violence occurring in the home.  (Def.'s Statement of Mat. Facts ("Def.'s SMF"), Dkt. [32-1] ¶¶ 33, 46.)  As Defendant and Patrick were talking, Plaintiff arrived at the apartment.  (Id. ¶ 52.)  Plaintiff believed that Defendant was a "drug addict" friend of Patrick's.  (Id. ¶ 56.)

After speaking with Patrick, Defendant became concerned about the lack of a specific plan to remove Plaintiff's and Patrick's two children from the domestic violence occurring in the home.  (Id. ¶¶ 51, 67.)  Defendant went to her car to call her supervisor, who instructed Defendant to call the Juvenile Court and advise it of the situation.  (Id. ¶¶ 66, 68-69.)  An intake officer at the court informed Defendant that the Juvenile Court judge had granted Authorizations for protective custody, which allowed DFCS to take custody of the children.  (Id. ¶¶ 72-74.)

While Defendant was in her car, Plaintiff decided to take the children out of the apartment.  (Id. ¶¶ 78-80.)  Plaintiff and his children got into a van, which was parked in a parking space in front of Defendant's vehicle.  (Id. ¶¶ 86, 91.)  The vehicles were separated by a lane for travel, with the front of Defendant's vehicle facing the rear of Plaintiff's vehicle.  (Id. ¶¶ 88-89.)

2

Defendant claims that she did not want the children to leave with Plaintiff because DFCS had custody of them. (Id. ¶ 94.) Plaintiff claims that as he was getting ready to back out of the parking space, Defendant approached his van, beat the driver's side window, and told him he couldn't leave with the children. (Id. ¶¶ 93, 95.) Plaintiff told her "no" and put the van in reverse. (Id. ¶ 96.)

What happened next is disputed. According to Plaintiff, Defendant ran to her car, pulled up behind Plaintiff's van, and deliberately drove her car into the back of Plaintiff's van while he was backing out. (Pl.'s Statement of Mat. Facts ("Pl.'s SMF")., Dkt. [36-3] ¶ 1.) Plaintiff contends that he got out of his van and asked Defendant to move her vehicle, but she did not respond. (Def.'s SMF, Dkt. [32-1] ¶¶ 104-108.) Plaintiff states that he got back in his van and began pulling it backwards and forwards until he was able to leave the parking space. (Id. ¶¶ 112-113.) Notably, Plaintiff contends that he made no contact with Defendant's vehicle. (Id. ¶ 114.) Defendant, on the other hand, contends that Plaintiff pushed her vehicle with his van until he had pushed her out of the way and was able to maneuver the van out of the parking space. (Def.'s Br. in Supp. Mot. for Summ. J. ("Def.'s Br."), Dkt. [32-2] at 7.)

When the police were discussing the incident with Defendant at the police department, they asked Defendant if she wanted to press charges against

AO 72A
(Rev.8/82)

Plaintiff.  (Def.'s SMF, Dkt. [32-1] ¶ 138.)  Defendant was instructed by her

DFCS supervisor to say "yes."  (Id. ¶ 141.)  On August 27, 2014, a Bill of

Indictment was issued against Plaintiff on the charge of aggravated assault for

striking Defendant's vehicle with his own.  (Id. ¶ 200-01.)  A trial was held on

January 13-14, 2015, in the Superior Court of Gwinnett County on the sole

charge of aggravated assault.  (Id. ¶ 202.)  At the close of evidence, Plaintiff,

through his attorney, moved for a directed verdict in Plaintiff's favor.  (Id. ¶

203.)  The trial judge denied the motion, finding that "a rational trier of fact

could find the essential elements of the crime beyond a reasonable doubt."  (Id.

¶ 204.)  On January 14, 2015, Plaintiff was acquitted of aggravated assault.

(Id. ¶ 205.)

On May 21, 2015, Plaintiff filed a Complaint for unreasonable seizure of

a person under the Fourth Amendment, malicious prosecution under the Fourth

Amendment, and interference with right of familial association under the First

and Fourteenth Amendments.  The Court previously dismissed all claims

except for one: malicious prosecution in violation of the Fourth Amendment.

(See March 9, 2016 Order, Dkt. [18].)  Defendant now moves for summary

judgment on that claim.

4

**Discussion**

## I.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-250.  In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).

The court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (holding that once the moving party has met its burden under Rule 56(a), the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II.  Analysis

The Eleventh Circuit has "unequivocally [] identified malicious prosecution to be a constitutional tort that is cognizable under § 1983." Uboh v. Reno, 141 F.3d 1000, 1002-03 (11th Cir. 1998).  "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation

6

of his Fourth Amendment right to be free from unreasonable *seizures* in

addition to the elements of the common law tort of malicious prosecution."

Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2015).  In Georgia, the elements

of a common law tort for malicious prosecution are: "(1) a criminal prosecution

instituted or continued by the present defendant; (2) with malice and without

probable cause; (3) that terminated in the plaintiff accused's favor; and (4)

caused damage to the plaintiff accused."  Brown v. GeorgiaCarry.org, Inc., 770

S.E.2d 56, 59 (Ga. Ct. App. 2015).

      "Whether probable cause existed for a plaintiff's prosecution is the

gravamen of a malicious prosecution claim."  Pombert v. Glock, Inc., 171 F.

Supp. 3d 1321, 1329-30 (N.D. Ga. 2016).  Defendant argues that the probable

cause element is dispositive in this case because of the trial judge's denial of

Plaintiff's motion for a directed verdict of acquittal.  (Def.'s Br., Dkt. [32-2] at

13-17.)  Indeed, in Monroe v. Sigler, the Supreme Court of Georgia held that

the denial of such a motion "constitute[s] a binding determination of the

existence of probable cause[.]" 353 S.E.2d 23, 25 (1987); see also Haile v.

Pittman, 389 S.E.2d 564, 567 (Ga. Ct. App. 1990) ("[W]hen a trial judge rules

that the evidence is sufficient *as a matter of law* to support a conviction . . . the

existence of probable cause has been established . . . as to preclude [an] action

for malicious prosecution.")  Plaintiff acknowledges the rule in <u>Monroe</u>, but urges the Court not to follow it, arguing that the denial of a motion for directed verdict in a criminal case is not the same as a binding determination of probable cause in a civil case.  (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Brief"), Dkt. [36] at 15-17.)  Plaintiff contends that: (1) the denial of a directed verdict in a criminal case means there are facts from which a jury could find guilt or innocence, and thus a jury could find either the existence or non-existence of probable cause; (2) upon a motion for a directed verdict in a criminal case, evidence is interpreted in the prosecution's favor, whereas in the summary judgment stage of a civil case evidence is viewed in a light most favorable to the non-moving party; and (3) the elements of federal collateral estoppel cannot be met because the issue of probable cause is not "distinctly put into issue" and "actually and necessarily determined" in a ruling on a motion for directed verdict.  (Pl.'s Brief, Dkt. [36] at 15-17.)

The Court finds Plaintiff's arguments unpersuasive because the facts of Plaintiff's case are not distinct from those in <u>Monroe</u>.  The same issues that Plaintiff raises were present when the Supreme Court of Georgia decided that the denial of a motion for directed verdict in a criminal case is sufficient to establish probable cause in a civil case for malicious prosecution.  <u>See Monroe</u>,

353 S.E.2d at 25; see also Morgan v. City of Valdosta, No. 7:11-CV-177 (HL), 2013 WL 3339047 at *7 (M.D. Ga. July 2, 2013) (rejecting an argument similar to the one Plaintiff makes that differing standards of review in criminal and civil cases foreclose the rule announced in Monroe).  Thus, the Court declines to depart from Monroe.

Applying Monroe here, Plaintiff's claim fails as a matter of law.  At the close of evidence at Plaintiff's criminal trial, Plaintiff, through his attorney, moved for a directed verdict of acquittal.  (Def.'s SMF, Dkt. [32-1] ¶ 203.) That motion was denied, with the trial court judge finding that "a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt."  (Id. ¶ 204.)  Thus, under Monroe, Plaintiff is foreclosed from arguing a lack of probable cause in this case and his claim must fail.  Accordingly, Defendant's Motion for Summary Judgment [32] is **GRANTED**.

## Conclusion

As discussed above, Defendant's Motion for Summary Judgment [32] is **GRANTED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this 7th day of April, 2017.

_____
**RICHARD W. STORY**
United States District Judge